```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION
```

JONATHAN MANLEY,

    Plaintiff,

v.                                    CASE NO. 8:08-CV-2165-T-17AEP

BRAD STUBE as SHERIFF
OF MANATEE COUNTY, FLORIDA,
a political subdivision,
DETECTIVE WILLIAM WALDRON,
an individual and UNKNOWN
SHERIFF'S DEPUTY(s) for
MANATEE COUNTY SHERIFF'S
OFFICE,

    Defendants.

_____/


ORDER

This cause is before the Court on:

    Dkt. 32   Motion to Dismiss
    Dkt. 35   Response

The First Amended Complaint includes a federal claim and state claims arising from the arrest Plaintiff Jonathan Manley on January 6, 2004. Plaintiff Manley was prosecuted by the State of Florida for sexual battery. In the course of his investigation, Defendant Waldron obtained a search warrant to search Plaintiff Manley's home. The state court judge granted Plaintiff's Manley Motion to Suppress on December 30, 2004, finding that Defendant Waldron omitted significant and material facts from the affidavit Defendant Waldron executed to obtain the search warrant. This ruling invalidated the search warrant. After the Motion to `Suppress was granted, a "Nolle Prosequi" was entered in the Case

Case No. 8:08-CV-2165-T-17AEP

No. 2004 CF 000034, Manatee County Circuit Court, on January 5, 2005. Plaintiff Manley commenced this case on October 29, 2008.

The First Amended Complaint includes the following claims:

| | |
|---|---|
| Count I | Claim of Violation of Civil Rights Pursuant to 42 U.S.C. Sec. 1983 against Defendants Sheriff and Waldron |
| Count II | Claim of Malicious Prosecution Against Sheriff and Waldron |
| Count III | Negligent Hiring and Retention Of Defendant Sheriff |
| Count IV | Claim of Failure to Supervise against Defendant Sheriff and Waldron |
| Count V | Claim of Negligence of Defendant Sheriff and Waldron |

I. Standard of Review

As the Supreme Court held in <u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim for relief that is plausible on its face." <u>Id.</u> at 1974 (rejecting the traditional 12(b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in plaintiff's favor. However, the Court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the

2

Case No. 8:08-CV-2165-T-17AEP

Court accept legal conclusions cast in the form of factual allegations. To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic, 127 S.Ct. at 1965.

In ruling on a motion to dismiss, the Court considers only the well-pleaded factual allegations of the complaint, documents central to or referenced in the complaint and matters judicially noticed. See LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). A document outside the four corners of the complaint may be considered if it is central to the plaintiff's claim and its contents are undisputed. Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337 (11th Cir. 2005). In Horsley v. Feldt, the Eleventh Circuit Court of Appeals said:

> "Our Rule 12(b)(6) decisions have adopted the 'incorporation by reference' doctrine, see In Re Silicon Graphics, Inc. Securities Litigation, 183 F.3d 970 (9th Cir. 1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. See Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999). "Undisputed" in this context means that the authenticity of the document is not challenged. See e.g. Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998)..."

Court accept legal conclusions cast in the form of factual allegations. To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic, 127 S.Ct. at 1965.

In ruling on a motion to dismiss, the Court considers only the well-pleaded factual allegations of the complaint, documents central to or referenced in the complaint and matters judicially noticed. See LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). A document outside the four corners of the complaint may be considered if it is central to the plaintiff's claim and its contents are undisputed. Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337 (11th Cir. 2005). In Horsley v. Feldt, the Eleventh Circuit Court of Appeals said:

> "Our Rule 12(b)(6) decisions have adopted the 'incorporation by reference' doctrine, see In Re Silicon Graphics, Inc. Securities Litigation, 183 F.3d 970 (9th Cir. 1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. See Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999). "Undisputed" in this context means that the authenticity of the document is not challenged. See e.g. Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998)..."

II.  Count I  - Section 1983 Claim

The title of Count I indicates that Count I is asserted against Defendant Waldron and Defendant Stube.  In the final paragraph, Plaintiff Manley requests entry of judgment against Defendant Stube only, as Sheriff of Manatee County.

In the General Allegations, Plaintiff Manley alleges that Defendant Stube and Defendant Waldron at all times acted within the scope of his employment.  Plaintiff Manley further alleges that on or about January 6, 2004, Defendant Stube and Defendant Waldron violated Plaintiff's civil rights guaranteed by the U.S. Constitution and the Florida Constitution.

Based on the allegations of the alleged customs and policies of Defendant Stube, as Sheriff of Manatee County, and the request for entry of judgment only against Defendant Stube, as Sheriff of Manatee County, the Court concludes that Count I is intended to be a claim for supervisory liability only.

Supervisory officials are not liable under Sec. 1983 for the unconstitutional acts of their subordinates on the basis of <u>respondeat</u> <u>superior</u> or vicarious liability.  Under Sec. 1983, supervisory liability occurs either when the supervisor personally participates in the alleged unconstitutional conduct, or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection is established "when a history of widespread abuse puts the responsible supervisor on notice of the

need to correct the alleged deprivation, and he fails to do so." See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Alternatively, the causal connection may be established when a supervisor's 'custom or policy...results in deliberate indifference to constitutional rights' or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully but failed to stop them from doing so." Id. at 1360.

In Count I of the First Amended Complaint (Dkt. 30), Plaintiff Manley alleges:

> 12. The SHERIFF'S custom and de facto policy of not supervising or regulating their officers' in situations of investigations was deliberately indifferent to MANLEY's constitutional rights. Specifically, in light of the nationally recognized danger of wrongful incarcerations, the SHERIFF knew or should have known that its custom and de facto policy would eventually cause the constitutional rights of a citizen within its jurisdiction, such as MANLEY, to be violated by one of its detectives.

> 13. The SHERIFF'S custom and de facto policy of ignoring and tolerating the safety of its citizens during wrongful arrests was deliberately indifferent to MANLEY's constitutional rights. The SHERIFF knew or should have known that this custom or de facto policy would eventually cause the constitutional rights of a citizen with (sic) its jurisdiction, such as MANLEY, to be violated by one of its Detectives.

> 14. Furthermore, The SHERIFF'S custom and de facto policy of not providing adequate training to its detectives involving

Case No. 8:08-CV-2165-T-17AEP

> investigations, when the SHERIFF knew that
> these offices would be acting with inadequate
> or insufficient training, was deliberately
> indifferent to MANLEY's constitutional
> rights.  Specifically, the SHERIFF knew or
> should have known that its failure to insure
> that detectives were properly trained in
> investigation, crime scene protection and the
> preservation of evidence within its
> jurisdiction, citizens such as MANLEY, would
> have his constitutional rights violated by
> one of the SHERIFF'S detectives.

In Count I, Plaintiff alleges that as a proximate result of the material omissions of pertinent facts from the search warrant affidavit, Plaintiff Manley was wrongfully deprived of his right to protect his liberty interest in his bodily integrity, a protected right under the Florida and Federal Constitutions. Plaintiff Manley further alleges that the arrest was made under color of law, and at the time the Plaintiff recognized that authority and color of law, as the Defendant, SHERIFF'S detectives were on duty and acting under what he perceived to be the authority of SHERIFF.

Plaintiff Manley alleges that Plaintiff suffered damages including "shame, embarrassment, mortification and disgrace, great mental anguish, including depression, anxiety, fear and loss of capacity for the enjoyment of life, medical expenses, past and future wages and the violation of his due process rights, civil rights, privacy right, and other physical and mental injuries suffered, all due to the terror inflicted on him by the deputies, employed by the SHERIFF, and he will continue to suffer losses into the future.  These losses are either permanent or continuing in nature and the Plaintiff will suffer these

6

losses and impairments in the future." (Dkt. 30, p. 5).

III. Count II - Malicious Prosecution

Defendant Stube considers Count II to be a state claim for malicious prosecution.

It is not clear whether Plaintiff Manley intends Count II to include a federal malicious prosecution claim or only a state malicious prosecution claim. There is no reference to Section 1983 in Count II, but Plaintiff Manley alleges constitutional violations. The Court will assume Count II is intended to include a federal malicious prosecution claim.

A. Applicable Limitations Period

The statute of limitations for claims brought under 42 U.S.C. Sec. 1983 is measured by the personal injury limitations period of the state. Wilson v. Garcia, 471 U.S. 261 (1985); Mullinax v. McElhenney, 817 F.2d 711, 716 n.2 (11th Cir. 1987).

B. Ch. 95.11 - Statute of Limitations

The statute of limitations for a claim of malicious prosecution and of false arrest is four years. See Ch. 95.11(3)(o), Fla. Stat. The statute of limitations for a violation of constitutional rights is four years. See Ch. 95.11(3)(p)(residual).

C. Accrual of the Action

This case was filed on October 29, 2008. Federal law

7

determines when a federal civil rights claim accrues. Mullinax, 817 F.2d at 716. The general federal rule is that "'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" Id. A plaintiff must know or have reason to know they were injured, and must be aware or should be aware of who inflicted the injury. Id. The Court must first identify the alleged injuries, and then determine when the plaintiff could have sued for them. Rozar v. Mullis, 85 F.3d 556 (11th Cir. 1996)

An exception to the general rule is the "continuing violation doctrine." See Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003). "The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly "situated." Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1222 (11th Cir. 2001). "If any event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing [suit] with respect to that event or series of events." Id.

The critical distinction in continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does. See Eaton v. Keith, 154 Fed. Appx. 844 (11th Cir. 2005).

8